UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MAID O'CLOVER, INC., Debtor, a Washington corporation, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CHEVRON USA INC., d/b/a CHEVRON PRODUCTS COMPANY, a Pennsylvania corporation, et al.,<br><br>　　　　Defendants. | NO. CV-03-3077-EFS<br><br>**ORDER GRANTING DEFENDANT CHEVRON U.S.A, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ALLOWING CLAIMS AND APPROVING SETOFF** |

On August 17, 2005, the Court heard oral argument on Defendant Chevron U.S.A., Inc.'s Motion for Partial Summary Judgment Allowing Claims and Approving Setoff ("Setoff Motion"), (Ct. Rec. 190). Mr. Randall P. Beighle and Ms. Mary Jo Heston appeared on behalf of Defendant Chevron U.S.A., Inc. ("Chevron"), while Plaintiffs Maid O'Clover, Inc. ("MOCC"), Maid O'Clover, South, Inc. ("MOCS"), and Maid O'Clover, East, Inc. ("MOCE"), collectively referred to as "MOC," were represented by Mr. James Perkins and Mr. Deihl R. Rettig. After reviewing the submitted material, taking oral argument, and considering relevant authority, the Court is fully informed and hereby **grants** Chevron's Setoff Motion, (Ct. Rec. 190).

///

ORDER ~ 1

## I. Background

Prior to filing for bankruptcy in late-2002, MOC owned and operated twenty retail motor fuel outlets across Eastern Washington. Fourteen of MOC's stations sold Chevron branded motor fuel and were primarily located in Yakima, Wenatchee, and Spokane, Washington. MOC consisted of three independent corporations, MOCC, MOCS, and MOCE, each of which owning several of the Chevron branded stations. For the most part, the three MOC entities were owned by Mr. Jeff Louden and Mr. Guy Louden. Prior to 1995, MOC purchased motor fuel directly from Chevron, which delivered the fuel to MOC's stations. The MOC's stations were "direct-served" during that period.

In 1993, Chevron approached Mr. Jeff Loudon, then MOC's chief officer, indicating it planned to discontinue selling motor fuel directly to retail outlets and asked MOC to become jobber-served. Jobbers are companies who purchase motor fuel directly from Chevron at wholesale prices, which are also known as "rack" prices, and then usually resell the fuel to third-party retail outlets in the jobbers' coverage area. Jobbers are responsible for obtaining the fuel at a wholesale distribution site and then delivering the fuel to their retail outlet customers.

After MOC was notified of Chevron's pending jobber conversion, MOC negotiated and entered an agreement ("1995 Jobber Agreement") on May 12, 1995, naming MOCS as a jobber. MOCS was allowed to purchase fuel at Chevron's Spokane, Pasco, and Seattle distribution sites for whatever price Chevron was selling motor fuel at on the day of purchase. MOCS then sold and delivered motor fuel to MOCS's, MOCC's, and MOCE's retail

outlets. MOCS did not mark-up the wholesale price in its sales to MOCC and MOCE. Beginning in 1998, MOCS also began delivering and selling motor fuel to the Ahtanum General Store.

In 1995, near the time MOCS entered into the 1995 Jobber Agreement, MOCS also entered into several facility improvement loan agreements with Chevron, which totaled over $3.1 million dollars. As part of these agreements, MOC's stations benefitting from the loans had to comply with Chevron's Hallmark 21 retail image standards. Additionaly, in 1995, MOC agreed to rent and use Chevron's credit card processing equipment and services. The jobber agreement and credit card equipment/service agreements were renewed in 1998 and 2000.

After MOC became jobber-served in 1995, it became increasingly less profitable until it reached a point in late-2002, when all three MOC entities filed for Chapter 11 bankruptcy. Thereafter, in January 2003, MOC commenced this case. In its Complaint, MOC alleged causes of action against Chevron based on (1) violations of the Washington Franchise Investment Protection Act (R.C.W. § 19.100); (2) violations of the Washington Gasoline Dealer Bill of Rights Act (R.C.W. § 19.120); (3) violations of the Consumer Protection Act (R.C.W. § 19.86); (4) negligence; (5) negligent misrepresentation; and (6) contractual breach of the duty of good faith and fair dealing.

## II. Analysis

**A. Standard of Review**

Summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

ORDER ~ 3

material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). When considering a motion for summary judgment, a court may not weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue for trial exists only if "the evidence is such that a reasonable jury could return a verdict" for the party opposing summary judgment. *Id.* at 248. In other words, issues of fact are not material and do not preclude summary judgment unless they "might affect the outcome of the suit under the governing law." *Id.* There is no genuine issue for trial if the evidence favoring the non-movant is "merely colorable" or "not significantly probative." *Id.* at 249.

If the party requesting summary judgment demonstrates the absence of a genuine material fact, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial" or judgment may be granted as a matter of law. *Anderson*, 477 U.S. at 248. This requires the party opposing summary judgment to present or identify in the record evidence sufficient to establish the existence of any challenged element that is essential to that party's case and for which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Failure to contradict the moving party's facts with counter affidavits or other responsive materials may result in the entry of summary judgment if the party requesting summary

judgment is otherwise entitled to judgment as a matter of law. *See Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).

**B. Chevron's Right to Offset Claims**

Following the Chapter 11 bankruptcy filings of MOCC, MOCS, and MOCE in December 2002, Chevron filed a Proof of Claims in each entity's bankruptcy case. In the Proof of Claims, Chevron asserted it was collectively owed $2,134,314.59 by the three entities for unpaid motor fuel bills, interest penalties, and station improvement loans. Thereafter, Chevron entered into a stipulation to resolve certain disputes with MOC (the "stipulation"). The stipulation, which was incorporated into the entities' respective Plans of Reorganizations, allowed Chevron to have its claims against MOC determined by forma settlement or by the Court in this action.

In its motion, Chevron explains its belief that MOC now only owes it $1,940,199.59. This amount consists of $1,407,602.93 in overdue gasoline payments and interest penalties and $532,596.66 in outstanding station improvement loans. MOC did not submit a brief in opposition to Chevron's motion, but Mr. Jeffery Loudon, co-owner of the MOC entities, did file a declaration opposing Chevron's motion. In his declaration, Mr. Loudon contests the amount claimed by Chevron relating to the improvement loans, but did not object to the overdue gasoline payment originally owed by MOCS. Chevron subsequently conceded in its reply brief that issues of material fact exist as to whether MOC must pay for the improvement loans. Thus, the only issues now before the Court are whether Chevron is entitled to judgment on the $1,404,602.93 in overdue gasoline payments and interest penalties ("overdue payment claim") and

ORDER ~ 5

if so, whether that amount may be used to offset any future judgment MOC may secure against Chevron in this action.

The filing of a "proof of claim [related to a bankruptcy proceeding] is *prima facie* evidence of the validity of the claim." *In re S. Cal. Plastics, Inc.*, 165 F.3d 1243, 1247-48 (9th Cir. 1999). "Although the creditor bears the ultimate burden of persuasion, the debtor must come forward with evidence to rebut the presumption of validity." *Id.* at 1248. MOC has not disputed Chevron's overdue payment claim or provided any evidence to rebut the claim. Thus, the Court enters judgment in favor of Chevron with regard to the overdue payment claim for the amount of $1,407,602.93.

"The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16 (1995). However, the "right of setoff is permissive, not mandatory; its application 'rests in the discretion of [the] court, which exercises discretion under the general principles of [equity].'" *Id.* at 1399 (quoting *In re Cascade Roads*, 34 F.3d 756, 763 (9th Cir. 1994)).

Setoff in bankruptcy cases is governed by 11 U.S.C. § 553. *Newberry Corp. v. Fireman's Fund Ins. Co.*, 95 F3d 1392, 1398 (9th Cir. 1996). Section 553 of Title 11 of the United States Code states:

> Except as otherwise provided . . . [Title 11] does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case. . . .

ORDER ~ 6

"The defining characteristic of setoff is that 'the mutual debt and claim . . . are generally those arising from different transactions.'" Newberry, Corp., 95 F.3d at 1398 (quoting 4 *Collier on Bankruptcy* ¶ 553.03 at 553-14 (15th ed. 1995)).

In this case, the Court finds no reason why any judgment granted to MOC should not be offset by the overdue payment claim asserted by Chevron. The debts involve mutual parties and arise from related, but different transactions. Thus, a setoff is appropriate and the Court grants Chevron's motion to offset any judgment MOC secures against Chevron by $1,407,602.93, with leave to Chevron to seek a higher offset at a later date once the question of the improvement loan is resolved.

Accordingly, IT IS **HEREBY ORDERED:** Defendant Chevron U.S.A., Inc.'s Motion for Partial Summary Judgment Allowing Claims and Approving Setoff, **(Ct. Rec. 190)**, is **GRANTED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide a copy to counsel.

**DATED** this ____25th____ day of August, 2005.

                          S/ Edward F. Shea

                            EDWARD F. SHEA
                    United States District Judge

Q:\Civil\2003\3077.msj.setoff.wpd