UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MAID O'CLOVER, INC., Debtor, a Washington corporation, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CHEVRON USA INC., d/b/a CHEVRON PRODUCTS COMPANY, a Pennsylvania corporation, et al.,<br><br>　　　　Defendants. | NO. CV-03-3077-EFS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CHEVRON U.S.A, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSAL OF PLAINTIFFS' CLAIMS UNDER WASHINGTON'S GASOLINE DEALER ACT** |

On August 17, 2005, the Court heard oral argument on Defendant Chevron U.S.A., Inc.'s Motion for Partial Summary Judgment Dismissal of Plaintiffs' Claims Under Washington's Gasoline Dealer Act ("GDBRA Motion"), (Ct. Rec. 106). Mr. Randall P. Beighle appeared on behalf of Defendant Chevron U.S.A., Inc. ("Chevron"), while Plaintiffs Maid O'Clover, Inc. ("MOCC"), Maid O'Clover, South, Inc. ("MOCS"), and Maid O'Clover, East, Inc. ("MOCE"), collectively referred to as "MOC," were represented by Mr. James Perkins. After reviewing the submitted material, taking oral argument, and considering relevant authority, the

ORDER ~ 1

Court is fully informed and hereby **grants in part** and **denies in part** Chevron's GDBRA Motion, (Ct. Rec. 106).[1]

**I. Gasoline Dealer Bill of Rights Act ("GDBRA")**

The GDBRA governs business dealings between motor fuel refiner-suppliers and motor fuel retailers. *See* R.C.W. § 19.20. To recover damages under the GDBRA, a plaintiff must prove five elements: (1) a "motor fuel refiner-supplier" entered into a "motor-fuel franchise" with the plaintiff; (2) the plaintiff was a "motor fuel retailer;" (3) the refiner-supplier violated R.C.W. § 19.120.070 or .080; (4) the violation caused damages to the plaintiff; and (5) the amount of those damages. *Id.*

Motor fuel refiner-suppliers generally include all entities who refine crude oil into petroleum and supply that petroleum to retail outlets. R.C.W. § 19.120.010(6). The parties do not dispute Chevron's status as a motor fuel refiner-supplier under the GDBRA. An entity is a motor fuel retailer if it "resells motor fuel entirely at one or more retail motor fuel outlets pursuant to a motor fuel franchise entered into with a refiner-supplier." *Id.* § 19.120.010(7).

Motor fuel franchises arise from "any oral or written contract, either expressed or implied, between a motor fuel refiner-supplier and

---

[1] The factual background of this case and standard of review for motions for summary judgment can be found in the Court's September 16, 2005, Order Denying Plaintiffs' Motion for Partial Summary Judgment and Granting in Part and Denying in Part Defendant Chevron U.S.A., Inc.'s Motion for Partial Summary Judgment Under the Washington Franchise Investor Protection Act, (Ct. Rec. 341).

ORDER ~ 2

a motor fuel retailer under which the motor fuel retailer is supplied motor fuel for resale to the public under a trademark owned or controlled by the motor fuel refiner-supplier. . . ." *Id.* § 19.120.010(5). The parties dispute whether MOCS, MOCC, and MOCE were motor fuel retailers or participants in a motor fuel franchise with Chevron under the GDBRA. If motor fuel franchises do not exist between the parties or the MOC entities are not motor fuel retailers, the GDBRA claims must be dismissed.

## II. Pre-1995 Jobber Agreement

Chevron does not believe MOC's Complaint alleges any viable arguments under the GDBRA regarding Chevron's conduct prior to the 1995 Jobber Agreement. Pursuant to this belief, Chevron claims the MOC entities' statuses prior to the 1995 Jobber Agreement are irrelevant, but does not dispute MOCS, MOCC, and MOCE were each motor fuel retailers independently engaged in motor-fuel franchises prior to 1995. Chevron asserts that all alleged GDBRA claims stem from Chevron's purported misconduct under the 1995 Jobber Agreement after it had been formed. MOC disagrees with Chevron's position, claiming Chevron "wrongly ignores" all issues of pre-1995 Jobber Agreement liability alleged in this case.

In its Complaint, MOC alleges, among other things, that Chevron (1) "offered to sell motor fuel franchises by means of written and oral communications which included untrue statements of material fact and made material omissions;" and (2) "engaged in acts, practices and courses of business which deceived plaintiffs." (Ct. Rec. 166-2 at 19.) MOC asserts this conduct was in violation of its rights under the GDBRA with regard to its pre-1995 Jobber Agreement relationships with Chevron. As noted


above, neither party disputes the MOC entities were motor fuel retailers prior to the 1995 Jobber Agreement, or that they were each motor fuel franchisees of Chevron. As such, the Court sees no reason why alleged untrue statements or material omissions made by Chevron could not be introduced at trial to demonstrate Chevron violated its GDBRA duties to the MOC entities prior to the 1995 Jobber Agreement's formation. Thus, Chevron's motion is denied to the extent it asks the Court to dismiss GDBRA claims occurring prior to the 1995 Jobber Agreement.

### III. 1995-1998

Chevron also moves the Court to dismiss all GDBRA claims arising from conduct after the 1995 Jobber Agreement was entered into by MOCS until 1998, when MOCS began selling fuel to Ahtanum General Store, a retailer not owned or operated by any MOC entity. Chevron believes each MOC entity ceased being a motor fuel retailer, subject to motor fuel franchises under the GDBRA, once MOCS entered into the 1995 Jobber Agreement and began selling motor fuel to MOCC and MOCE.

#### *A. MOCC & MOCE*

Chevron argues MOCC and MOCE are neither motor fuel retailers or parties to a motor fuel franchise under the GDBRA because Chevron was no longer obligated to directly provide their gasoline. Chevron relies heavily on the fact the 1995, 1998, and 2000 Jobber Agreements were solely entered into by MOCS, who became a Chevron jobber and ultimately sold the gasoline it purchased from Chevron to MOCC and MOCE. Because Chevron only dealt with MOCS, Chevron contends it did not supply gasoline to MOCC or MOCE, and as such, cannot be found to have been involved in a motor fuel franchise agreement with these two particular Plaintiffs.

ORDER ~ 4

Furthermore, Chevron asserts the lack of a franchise agreement with MOCC and MOCE precludes them from being motor fuel retailers because entities only become motor fuel retailers under the GDBRA by way of mutual agreement.

MOCC and MOCE respond by claiming their motor fuel franchise relationships either stem from an implied contract it had with Chevron or by way of MOCS entering the 1995 Jobber Agreement as their agent.  MOC emphasizes that motor fuel franchise agreements only require the franchisee be supplied with fuel by the franchiser, and not necessarily purchase fuel from the franchiser. R.C.W. § 19.120.070(5).  MOC also notes that motor fuel franchises may be premised on a implied contract. Based on these statutory allowances, MOC believes MOCC and MOCE's each entered implied contracts with Chevron to become or remain franchised retailers of Chevron's products.  MOC points to numerous circumstances it believes demonstrate these implied motor fuel franchise contracts existed.  These circumstances include, but are not limited to, the following: (1) Chevron collectively encouraged all MOC entities to move from being direct-served to jobber-served; (2) Chevron mandated all MOC entities selling Chevron product conform with its image and operation standards; and (3) Chevron required MOCS to deliver its product not only to MOCS's retail outlets, but also those owned by MOCC and MOCE.

Even if implied contracts are not found to exist, MOC urges the Court to find MOCS was acting as MOCC's and MOCE's agent when it entered the Jobber Agreements.  In which case, MOCS's assent would have served as the other entities assent to the Jobber Agreements and formed the basis of MOCC and MOCE's motor fuel franchises with Chevron.

ORDER ~ 5

Because courts must construe all evidence in favor of the non-moving party when considering a motion for summary judgment, the Court in this instance cannot grant Chevron's motion on this issue. Genuine issues of material fact exist as to whether implied franchise agreements existed between Chevron and MOCC and MOCE, which would grant these Plaintiffs protections under the GDBRA after they became jobber-served by MOCS in 1995.

### B. MOCS

Chevron believes MOCS ceased being a motor fuel retailer under the GDBRA when it entered the 1995 Jobber Agreement and first began selling fuel to MOCC and MOCE. Chevron points to the definition of motor fuel retailer, which requires entities, such as MOCS, to resell their motor fuel "entirely at one or more retail motor fuel outlets. . . ." R.C.W. § 19.120.010(7). Thus, according to Chevron, because MOCS was selling fuel to MOCC and MOCS, it was engaged in extra-retail transactions, precluding it from GDBRA protection.

In opposition, MOC essentially asks the Court to ignore MOCS's sales to MOCC and MOCE because they are predominantly owned by the same owners. According to MOC, due to the companies' special relationships, MOCS's motor fuel transfers were mere formalities that should not be considered sales because the wholesale price was not marked-up. Despite the appeal of MOC's argument, the Court cannot ignore the plain and clear statutory language used to define who is and is not a motor fuel retailer. Entities who do not "entirely" resell their fuel at their retail outlets are not motor fuel retailers for purposes of the GDBRA. For whatever reason, MOCC's, MOCS's, and MOCE's owners, although nearly identical for

each entity, desired to create and maintain three independent business entities. At different times, the owners of the MOC entities likely reaped benefits from the maintenance of the three independent corporate identities. However, in this instance it appears there was a drawback to segregated ownership and just as the owner's enjoyed benefits from owning three separate corporate entities, they must now accept its drawbacks.

Thus, because MOCS did not "entirely" resell its fuel at its own retail outlets after the 1995 Jobber Agreement was entered into, it was not a motor fuel retailer under the GDBRA and may not use the statute against Chevron for claims of misconduct occurring after its status as a motor fuel retailer ended when it became a jobber. Thus, summary judgment is granted with regard to MOCS's complaints under the GBDRA after it became a jobber and sold fuel to entities it did not own, including MOCC and MOCE.

**IV. Post-1998**

The parties agree that once MOCS began selling motor fuel to unrelated third parties in 1998, *i.e.* Ahtanum General Store, it ceased being a motor fuel retailer under the GDBRA and may not bring claims against Chevron for misconduct occurring thereafter. Thus, the Court grants summary judgment consistent with this agreement. However, the parties disagree as to whether MOCC and MOCE ever ceased being a motor fuel retailer, because they never sold motor fuel to anyone other than consumers. As discussed above, the material issue of whether MOCC and MOCE are motor fuel retailers is genuinely disputed. Due to this dispute, the Court denies summary judgment with regard to whether post-

ORDER ~ 7

1998 GDBRA issues may be brought by MOCC or MOCE, because if MOCC or MOCE were motor fuel retailers involved in motor fuel franchises with Chevron between 1995 and 1998, they continued being franchises after 1998 and vice versa.

Accordingly, **IT IS HEREBY ORDERED:** Defendant Chevron U.S.A., Inc.'s Motion for Partial Summary Judgment Dismissal of Plaintiffs' Claims Under Washington's Gasoline Dealer Act, **(Ct. Rec. 106)**, is **GRANTED IN PART** (post-1995 with regard to MOCS) and **DENIED IN PART** (pre-1995 Jobber Agreement with regard to MOCC, MOCS, and MOCE, post-1995 with regard to MOCC and MOCS).

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide a copy to counsel.

**DATED** this 21st day of September, 2005.

S/ Edward F. Shea

EDWARD F. SHEA
United States District Judge

Q:\Civil\2003\3077.msj.GDBRA.wpd

ORDER ~ 8