UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MAID O'CLOVER, INC., Debtor, a Washington corporation, et al.,<br><br>　　　　Plaintiffs,<br><br>　　　v.<br><br>CHEVRON USA INC., d/b/a CHEVRON PRODUCTS COMPANY, a Pennsylvania corporation, et al.,<br><br>　　　　Defendants. | NO. CV-03-3077-EFS<br><br>**ORDER DENYING DEFENDANT CHEVRON U.S.A, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSAL OF PLAINTIFFS' GASOLINE PRICING CLAIMS** |

　　On August 17, 2005, the Court heard oral argument on Defendant Chevron U.S.A., Inc.'s Motion for Partial Summary Judgment Dismissal of Plaintiffs' Gasoline Pricing Claims("Pricing Motion"), (Ct. Rec. 183). Mr. Randall P. Beighle appeared on behalf of Defendant Chevron U.S.A., Inc. ("Chevron"), while Plaintiffs Maid O'Clover, Inc. ("MOCC"), Maid O'Clover, South, Inc. ("MOCS"), and Maid O'Clover, East, Inc. ("MOCE"), collectively referred to as "MOC," were represented by Mr. James Perkins. After reviewing the submitted material, taking oral argument, and considering relevant authority, the Court is fully informed and hereby **denies** Chevron's Pricing Motion, (Ct. Rec. 183).[1]

---

　　[1]The factual background of this case and standard of review for motions for summary judgment can be found in the Court's September 16,

ORDER ~ 1

**I. UCC: Good Faith Pricing**

Article 2 of the Uniform Commercial Code as adopted by Washington (the "UCC") "applies to transactions in goods." R.C.W. § 62A.2-102. Goods include all things "movable at the time of identification to the contract for sale" other than money, investment securities, and "things in action." *Id.* §§ 62A.2-105(1) & 107.  Thus, because this suit arises from a dispute regarding obligations under a sales contract for gasoline, a movable good, the UCC governs some claims asserted by MOC in this case.

"Every contract or duty [under the UCC] imposes an obligation of good faith in its performance or enforcement." *Id.* § 62A.1-203. Moreover, when parties to a sales contract agree the seller will fix prices at a later date, those future prices must be fixed in good faith. *Id.* § 62A.2-305(2).  In transactions between merchants, good faith "means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." *Id.* § 62A.2-103(b).  In this case, because the 1995 Jobber Agreement allowed Chevron to set the price term, Chevron was obligated to fix wholesale rack prices in good faith and could be found to have violated that duty if it did not honestly set those prices or observe reasonable commercial standards of fair dealing when doing so.

Chevron moves the Court to find its prices were set in good faith and not in violation of its UCC obligations.  Chevron primarily relies on comment 3 to UCC § 2-305 and several extra-jurisdictional cases to

2005, Order Denying Plaintiffs' Motion for Partial Summary Judgment and Granting in Part and Denying in Part Defendant Chevron U.S.A., Inc.'s Motion for Partial Summary Judgment Under the Washington Franchise Investor Protection Act, (Ct. Rec. 341).

ORDER ~ 2

support its claim. Comment 3 to UCC § 2-305 states that "in the normal case a 'posted price' or future seller's or buyer's 'given price,' 'price in effect,' 'market price,' or the like satisfies the good faith requirement." Chevron believes this comment and several cases that have construed it demonstrate the "strong presumption" a gasoline wholesaler has acted in good faith under the UCC when (1) it sets prices in line with the posted prices of other wholesalers in the same market and (2) the posted prices are fairly applied by the wholesaler to similarly situated purchasers.

Chevron argues it should be granted summary judgment with regard to MOC's claims the post-1995 Jobber Agreement gasoline prices were not fixed in good faith because Chevron's pricing decisions afford it the "strong presumption" described above. In part, Chevron alleges that between 1995 and 2003, its average wholesale rack prices were lower than the average branded rack prices for regular unleaded gasoline at those Chevron racks from which MOC normally purchased its gasoline. Similarly, Chevron asserts its average posted rack price was "in line with the average posted price of unbranded gasoline." Furthermore, Chevron contends its posted prices were fairly applied to similarly-situated purchasers, in that "every jobber purchasing at a specific terminal either paid the same rack price for Chevron gasoline or they paid a special price that was set to respond to unique market conditions in specified areas." As further support for its contention it set prices in good faith, Chevron explains how its "pricing team relied on numerous sources of information on market conditions and wholesale competitor pricing." These alleged sources included Lundberg Surveys, OPIS,

ORDER ~ 3

Platt's, Oil Express, and other reports of local market conditions provided by Chevron personnel, jobbers, and dealers.

For the most part, MOC responds to Chevron's motion by pointing to asserted deficiencies in Chevron's pricing procedures, which it believes inflated jobber prices so that MOC was unable to effectively compete with local competitors, namely ARCO.  Although not stated directly, MOC's arguments express a belief these deficiencies were not in compliance with Chevron's duty to set prices in good faith.  MOC's main complaints with Chevron's pricing techniques lie with Chevron's failure to (1) conduct street price surveys after 1995 in Eastern Washington, (2) compare street prices with wholesale rack prices, and (3) not taking unpublished discounts offered by other wholesalers to non-Chevron jobbers. In sum, MOC believes Chevron did not use proper practices to set prices, that if used, would have led to prices more competitive with gasolines purchase prices enjoyed by non-Chevron retailers.

Assuming for the sake of argument that the UCC entitles Chevron to a "strong presumption" its pricing practices were conducted in good faith,[2] Chevron must keep in mind that like all other presumptions, this presumption may be rebutted.  Just because Chevron offered wholesale rack prices in-line with other wholesaler's posted prices, it does not necessarily mean MOC was paying prices equivalent to other retailers or jobbers.  The fact other wholesalers may have been offering undisclosed discounts to their customers creates a genuine issue as to whether MOC was forced to purchase gasoline at rates higher than its competitors,

---

[2] The Court makes no finding with regard to whether such a presumption does or does not exist under the UCC.

ORDER ~ 4

which foreclosed MOC from effectively competing. Similarly, the fact ARCO does not publish rack prices and the apparent lack of regular street pricing surveys to review ARCO and other competitor's prices further calls into question whether Chevron's pricing techniques were designed to allow MOC to remain competitive during the course of its jobber agreement with Chevron. These issues are mentioned not because competitive pricing is the standard for determining whether a price was set in good faith under the UCC, but to reflect the complexities related to this issue.

As stated above, sellers tasked with setting prices after a contract has been formed must fix those prices in good faith by acting honestly and observing reasonable commercial standards of fair dealing in the trade. R.C.W. § 62A.2-103(b). Here, the Court finds a genuinely disputed issue of material fact exists as to whether Chevron's pricing practices were in accordance with reasonable commercial standards in the trade of gasoline wholesaling based on the potential deficiencies illustrated by MOC. Consequently, the Court may not grant summary judgment on this issue and must allow MOC to present this question to the trier-of-fact.

**II. FIPA & GDBRA: Fair and Reasonable Prices**

Both the Franchise Investment Protection Act ("FIPA") and Gasoline Dealer Bill of Rights Act ("GDBRA"), which respectively govern the franchisor-franchisee and motor fuel supplier-retailer relationships, contain sections prohibiting franchisors and motor fuel refiner-suppliers respectively from selling products or motor fuel to franchisees and motor fuel retailers "for more than a fair and reasonable price." R.C.W. §§ 190.100.180(2)(d) & 19.120.080(2)(c). Selling products or motor fuel at

ORDER ~ 5

unfair or unreasonable prices is deemed "an unfair or deceptive act or practice or an unfair method of competition" and unlawful under the two statutes. *Id.* § 190.100.180(2)(d) & 19.120.080(2)(c).

Chevron equates FIPA and GDBRA's fair and reasonable price standards with the good faith pricing standard required by the UCC. Consequently, Chevron moves the Court to find it complied with its FIPA and GDBRA pricing requirements for the same reasons it believes it is entitled to summary judgment on the good faith pricing claim. MOC responds by explaining its belief the "fair and reasonable" standards require more of franchisers/motor fuel refiner-suppliers than the UCC's good faith standard. MOC points to the statutes different use of language and assertions FIPA and GDBRA were intended to provide greater protection to franchisee and retailers based on their special relationships with the sellers, as opposed to merchants who purportedly bargain with equal power under the UCC. MOC also notes that a party who sets prices in good faith, may nonetheless set a price that is unfair or unreasonable due to mistake or ignorance. In such circumstances, by design of the statutes, MOC argues a franchisor or motor fuel refiner-supplier may be liable under FIPA or GDBRA, but not the UCC. Chevron counters by referring to a law review article, which asserts the fair and reasonable price standard "should be interpreted to mean 'bona fide wholesale.'" Donald S. Chisum, *State Regulation of Franchising: The Washington Experience*, 48 Wash. L.R. 291, 372 (1973).

Regardless of whether FIPA and GDBRA's fair and reasonable standards are more protective than the UCC's good faith standard, the Court denies Chevron's motion for summary judgment on this issue for the same reasons

ORDER ~ 6

it denies the motion with regard to MOC's UCC good faith claim. A genuine issue of material fact exists as to whether Chevron's post-1995 Jobber Agreement prices were fair and reasonable, just as one exists regarding whether those same prices were fixed in good faith.

Accordingly, **IT IS HEREBY ORDERED:** Defendant Chevron U.S.A., Inc.'s Motion for Partial Summary Judgment Dismissal of Plaintiffs' Gasoline Pricing Claims, **(Ct. Rec. 183),** is **DENIED.**

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide a copy to counsel.

**DATED** this   21st   day of September, 2005.


                         S/ Edward F. Shea
                         EDWARD F. SHEA
                    United States District Judge

Q:\Civil\2003\3077.msj.pricing.wpd

ORDER ~ 7